UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOHN CRAWFORD,

                 Petitioner,

-v-

WILLIAMS LEE, Superintendent,
Green Haven Correctional Facility,

                 Respondent.
-------------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D. N.Y.
★ FEB 2 6 2013 ★
**BROOKLYN OFFICE**

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
09-CV-4527 (CBA)

**AMON, Chief United States District Judge:**

       John Crawford, proceeding *pro se*, petitions this Court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. He seeks to vacate his conviction for Manslaughter in the First

Degree, N.Y. Penal Law § 125.20. Crawford claims that he was deprived of his due process

right to a fair trial and his Sixth Amendment Confrontation Clause rights when the prosecutor

was allowed to elicit inadmissible hearsay testimony that identified Crawford as the perpetrator.

Crawford also claims he was denied his right to a fair trial when the prosecutor made improper

comments in summation and while questioning witnesses. For the following reasons, the

petition is denied.

## BACKGROUND

### I.    State Court Proceedings

       The following facts were presented at trial. On October 2, 2004, the body of Lionel

Ashley was discovered inside a large black laundry bag, which was inside a shopping cart, on the

street in the Crown Heights neighborhood of Brooklyn, New York. (Trial Tr. Vol. V at 198;

Vol. VI at 333.) Ashley was fully dressed but was not wearing shoes, and no wallet was found

on his body. (Trial Tr. Vol. IV at 110; Vol. VI at 394; Vol. VIII at 658.) An autopsy revealed

that Ashley died from a stab wound to the right side of his chest. (Trial Tr. Vol. VI at 400, 408.)

Detective John Lantino of the 77th Precinct Detective Squad was assigned to investigate Ashley's death. Five days after Ashley's body was discovered—October 7, 2004—a woman named Tiaya Browning came to the police station and told Detective Lantino that a man she knew as "Dell" had told her that he stabbed the man who was found inside the laundry bag. According to Browning, Dell also claimed that he had (1) cut up the body so that it would fit in the shopping cart and (2) killed two other people at the same time. (Trial Tr. Vol. VII at 553-55.) Detective Lantino knew at that time that Ashley's body had not been dismembered. He also had found no evidence of anyone else being killed at the time of Ashley's death. Browning told Detective Latino that she had also seen Dell throw some bloody gloves into a sewer drain. (Trial Tr. Vol. VII at 556.) Detective Latino ordered a search of the sewer at the identified location, which produced a plastic bag containing one blue glove. The police were unable to obtain any fingerprints or DNA on the glove. Detective Latino asked Browning to find out the real name of the person she knew as Dell. He tried to contact Browning at a later date but ultimately never spoke to her again. (Trial Tr. Vol. VIII at 643-652.)

Meanwhile, Detective Lantino obtained information that the word "on the streets" was that Ashley had been killed by the petitioner, John Crawford. (Trial Tr. Vol. VIII at 642, 652, 745.) On October 20, 2004, Detective Lantino met with Crawford's girlfriend, Antoinette Sanchez. Sanchez consented to a search of the apartment that she shared with Crawford. The police recovered an empty wallet in the apartment which was later identified as Ashley's wallet. (Trial Tr. Vol. VII at 362, 365; Vol. VIII at 653-59.)

Detective Lantino learned that Crawford had been incarcerated on an unrelated matter on Rikers Island since October 6, 2004—four days after Ashley's body was found. (Trial Tr. Vol. VIII at 661-62.) After Crawford's pending case was resolved, Detective Lantino went to speak

- 2 -

to Crawford about Ashley's death on December 16, 2004. After being advised of his Miranda rights, Crawford admitted to killing Ashley. Crawford provided a statement explaining that he and Sanchez were walking down Troy Avenue in Crown Heights when they walked past Ashley. Crawford and Ashley had words about Ashley being sexually involved with Sanchez. Crawford told Sanchez to leave, which she did. According to Crawford's statement, Ashley pulled a gun on Crawford after Sanchez left and threatened to shoot him in the head. Crawford stated that he was scared and pulled out his knife and stabbed Ashley. Crawford admitted that he took Ashley's shoes, wallet, and money, and left Ashley's body in a bag in a shopping cart on Park Place. (Trial Tr. Vol. VIII at 663-66, 669, 677.)

Five days after Crawford provided this statement, on December 21, 2004, Assistant District Attorney Jennifer Sipress conducted an audiotaped interview of Crawford. Crawford described the crime just as he had in his statement to Detective Lantino, but added that he was intoxicated on "crack and dope" when he stabbed Ashley. (Trial Tr. Vol. V at 262, 267; Resp. Ex. F at 6.)

Crawford was tried before a jury. Crawford's handwritten confession and Detective Lantino's written memorialization of the confession, which Crawford signed, were read to the jury. (Trial Tr. Vol. VIII at 676-80.) The audiotaped statement that he made to ADA Sipress was also played for the jury at trial, and a transcript was provided while it was being played. (Trial Tr. Vol. V at 269-70.) At the conclusion of the trial, Crawford was acquitted of murder in the second degree, N.Y. Penal Law § 125.25, and convicted of Manslaughter in the First Degree, N.Y. Penal Law § 125.20. (Trial Tr. Vol. IX at 961.) Crawford was sentenced as a second felony offender to a term of imprisonment of twenty-five years and five years of post-release supervision. (Sentencing Tr. Vol. X at 20.) The Appellate Division affirmed Crawford's

conviction. People v. Crawford, 54 A.D.3d 961, 962 (N.Y. App. Div. 2008). The New York

Court of Appeals denied leave to appeal. People v. Crawford, 12 N.Y.3d 782 (2009).

## II.     Federal habeas petition

Crawford filed his federal habeas petition on October 13, 2009. On December 17, 2009,

Crawford filed a motion to stay his habeas petition while he exhausted an ineffective assistance

of counsel claim in state court. (DE 4.) This Court denied the motion on March 15, 2010,

reserving decision on Crawford's original petition. (DE 9.)

The Court now considers Crawford's petition. The petition does not specify what claims

Crawford is raising in this habeas proceeding, other than to (1) mention that the state courts

unreasonably applied Brady v. Maryland, 373 U.S. 83 (1963), and (2) re-state the issues he

raised on direct appeal. The government assumed in its opposition that Crawford intended to

raise all of the claims he exhausted in state court, and this Court will do the same.[1]

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal

habeas petitioner is entitled to relief from a state court's "adjudication on the merits" of a claim

only if it resulted from a decision that "was contrary to, or involved an unreasonable application

of, clearly established federal law, as determined by the Supreme Court of the United States; or

---

[1] The Court notes that in his brief to the Appellate Division on direct appeal, Crawford adverted to Brady, asserting that the prosecutor "withheld obvious Brady material until essentially the eve of trial." (Resp. Ex. B. at 36-37.) Although Respondent's memorandum in opposition states that Crawford raised this claim on his direct appeal, a review of Crawford's brief on direct appeal shows that the prosecutor's delayed disclosure of potentially exculpatory material (Browning's statement to the police regarding Dell) was referenced simply to underscore the point that the prosecution engaged in a pattern of misconduct and did not independently form the basis of a Brady claim. Thus, no Brady claim was ever presented to the Appellate Division such that Brady could have been applied, unreasonably or not.

To the extent that Crawford's reference to the delayed disclosure of Browning's statement can be construed as a claim, it is without merit. Defense counsel was able to present Browning as a witness at trial and cross-examine the prosecution's witnesses about her statements. As Crawford was able to take advantage of the evidence at trial, no Brady violation occurred. United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001) ("[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner. There is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial . . . .").

. . . [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). The Supreme Court has explained the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-413. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011).

## DISCUSSION

### I. Due Process and Confrontation Clause—Hearsay Evidence

Crawford argued on direct appeal that his due process rights and his rights under the Confrontation Clause of the Sixth Amendment were violated when certain hearsay evidence was admitted at trial.

#### A. Procedural Default

A federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). A determination that a claim is unpreserved is a sufficient indication that the state court denied the

claim on state procedural grounds. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

"However, the state law ground is only adequate to support the judgment and foreclose review of

a federal claim if it is 'firmly established and regularly followed' in the state." Garvey v.

Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee v. Kemna, 534 U.S. 362, 376 (2002)).

"Further, in certain limited circumstances, even firmly established and regularly followed state

rules will not foreclose review of a federal claim if the application of the rule in a particular case

is 'exorbitant.'" Id. at 713-14 (quoting Lee, 534 U.S. at 376).

Under the New York contemporaneous objection rule, codified at N.Y. C.P.L.

§ 470.05(2), appellate review of a trial court ruling is precluded unless an objection was made to

the ruling "by the party claiming error, at the time of such ruling or instruction or at any

subsequent time when the court had an opportunity of effectively changing the same." As

interpreted by New York courts, the rule "require[s], at the very least, that any matter which a

party wishes to preserve . . . be brought to the attention of the trial court at a time and in a way

that gave [it] the opportunity to remedy the problem and thereby avert reversible error." Whitley

v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) (internal quotation marks and citations omitted). "A

general objection is not sufficient to preserve an issue since such would not alert the court to

defendant's position. Instead, New York's highest courts uniformly instruct that to preserve a

particular issue for appeal, defendant must specifically focus on the alleged error." Garvey v.

Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (internal citations omitted) (collecting cases). This

means that a defendant must contemporaneously and specifically raise his constitutional

arguments before the trial court. See, e.g. People v. Angelo, 88 N.Y.2d 217, 221 (1996) (finding

constitutional claims unpreserved where defendant did not present them to the state court when

making his evidentiary objection); People v. Robinson, 41 A.D.3d 1183, 1183-84 (N.Y. App.

Div. 2007) ("Defendant also failed to preserve for our review [claimed violations of his] state and federal constitutional right to due process and right of confrontation inasmuch as defendant objected to that questioning solely on the ground that the testimony sought to be elicited by that questioning was hearsay . . . ."); Wright v. Duncan, No. 11-1463, 2012 WL 4856398, at *2 (2d Cir. Oct. 15, 2012) ("[T]he New York Court of Appeals has long rejected invitations to review constitutional arguments purportedly raised implicitly in the trial court.").

In this case, the Appellate Division addressed one of Crawford's hearsay claims on the merits, rejecting it because the evidence was not offered for its truth. Crawford, 54 A.D.3d at 962. The Appellate Division went on to hold, citing to New York's contemporaneous objection rule, that "the defendant's remaining contentions regarding alleged hearsay errors are unpreserved for appellate review and, in any event, are without merit." Id. (citation omitted). The Appellate Division also held that Crawford's contention that "the same testimony violated his rights under the Confrontation Clause of the Sixth Amendment is unpreserved for appellate review and, in any event, is without merit." Id. (citation omitted). These holdings rest on a procedural bar, despite the alternative holding that the claims are without merit. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.).

Crawford does not argue that N.Y. C.P.L. § 470.05(2) is not an independent or adequate state law ground. Nor could he. Invocation of this state procedural rule is clearly independent of any federal ground for rejecting Crawford's claims, and courts in this Circuit have repeatedly found New York's contemporaneous objection rule adequate—i.e., "firmly established and regularly followed." E.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011); Richardson v.

Greene, 497 F.3d 212, 219 (2d Cir. 2007); Garvey, 485 F.3d at 718. Nor was the rule

exorbitantly applied in this case. The Court's review of the record confirms that while Crawford

made some hearsay objections, he did not specifically object to any of the contested testimony on

due process or Confrontation grounds. Accordingly the Court finds no misapplication of the

rule, much less an exorbitant one. Crawford's claims are thus procedurally defaulted. As

Crawford has failed to advance any argument regarding cause and prejudice to excuse the

procedural default or suggesting that a fundamental miscarriage of justice would occur if these

claims are not considered, the Court finds review of these claims barred by the procedural default

doctrine. Coleman, 501 U.S. at 750; Harris v. Reed, 489 U.S. 255, 262 (1989); Bossett v.

Walker, 41 F.3d 825, 829 (2d Cir. 1994) (finding that a petitioner did not meet the cause and

prejudice showing where he did not give any reason for failing to raise pertinent issues on appeal

in state court).

　　B.　Alternative Holding on the Merits

　　Further, even if the Court were to consider the Appellate Division's alternative holding on

the merits, Crawford would not be entitled to relief. Crawford objected to the admission of the

following testimony:

1) Detective Lantino testified on direct examination that Ashley's mother, Vanessa Brown, gave him "information that she heard from the streets [the name of] the person that was responsible for the killing." (Trial Tr. Vol. VIII at 642.)

2) Detective Lantino testified on direct examination that he received other information "from the streets" that a person with the nickname Life, who was Antoinette Sanchez's boyfriend, was responsible for Ashley's death. (Trial Tr. Vol. VIII at 652.)

3) Detective Lantino again made reference on re-direct examination to the fact that he had information from Ashley's family that Crawford (who also went by the nickname "Life") had been involved in Ashley's death. (Trial Tr. Vol. VIII at 785-86.)

4) Detective Lantino testified on redirect examination that a witness named Mercedes Nieves, who did not testify at trial, told him that she saw Crawford pushing the shopping

cart in which Ashley's body ultimately was discovered. (Trial Tr. Vol. VIII at 782; Vol. IX at 794.)

5) Assistant District Attorney Sipress testified that she audiotaped an interview with Mercedes Nieves. (Trial Tr. Vol. V at 255.)

Crawford also argued that the erroneous admission of the above testimony was exacerbated when the prosecutor told the jury in its opening statements what Sanchez and Nieves each saw and/or heard, then failed to call either as a witness.

     *1. Due Process*

The standard for establishing a due process violation stemming from state evidentiary error is high:[2] "Only when evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice,'" is the due process clause implicated. <u>Perry v. New Hampshire</u>, 132 S. Ct. 716, 723 (2012) (quoting <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990)). "Such unfairness will only result where: '[T]he erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" <u>McKinnon v. Superintendent, Great Meadow Corr. Facility</u>, 422 F. App'x 69, 73 (2d Cir. 2011) (quoting <u>Collins v. Scully</u>, 755 F.2d 16, 19 (2d Cir. 1985)) (alteration in original).

Whether or not the contested testimony was properly admitted under New York evidentiary rules, Crawford has failed to show that any errors were of constitutional magnitude entitling him to habeas relief. The above testimony "viewed objectively in light of the entire record before the jury," was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it," such that

---

[2] While a state court's evidentiary determinations are generally not cognizable on habeas review, <u>see, e.g.,</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991), the Court does consider the federal constitutional claim that the admission of the allegedly hearsay testimony deprived Crawford of his due process right to a fair trial.

Crawford's trial was rendered fundamentally unfair in violation of due process. Collins, 755 F.2d at 19.

The allegedly hearsay testimony to which Crawford objects was hardly the linchpin of the case: Crawford twice confessed to the offense after properly administered Miranda warnings, and Crawford's account linked up accurately to the physical evidence, unlike that of the other suspect in the case, Dell. Even defense counsel indicated in his closing argument that it was self-defense rather than identity that was the primary issue in the case. (Trial Tr. IX at 840.) In light of the strength of the independent evidence against Crawford, the Court cannot conclude that Crawford was deprived of a fundamentally fair trial.

As for Crawford's claim that the allegedly erroneously admitted testimony was exacerbated by the prosecutor's opening statement, the Supreme Court has declined to find reversible constitutional error where anticipated testimony summarized in the prosecution's opening statement did not come to pass, at least where a limiting instruction is given. The Court explained:

> [H]ere we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given . . . . [I]t does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial. At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately.

Frazier v. Cupp, 394 U.S. 731, 736 (1969) (internal quotation marks omitted); see Bramble v. Griffin, No. 12 CIV. 1697 BMC, 2012 WL 2930146, at *8 n.4 (E.D.N.Y. July 18, 2012)

("Although Frazier focused specifically on the Confrontation Clause, its analysis is equally applicable to a due process challenge.").

In this case, the opening statement's summaries of Sanchez's and Nieves' anticipated testimonies were not presented as the centerpieces of the prosecution's case, and the trial court twice instructed the jury prior to opening statements that counsels' opening statements or other statements were not evidence in the case. (Trial Tr. Vol. IV at 20-21.) After a trial that spanned a week, the trial court reminded the jury in its final charge that counsels' remarks and argument were not evidence and that they must "take the evidence from the mouths of the witnesses . . . and from the exhibits which have been received and marked into evidence." (Id. at 896.) Even considered cumulatively with the other allegedly erroneously admitted testimony, the Court cannot conclude that presenting the anticipated testimony was "so extremely unfair that [it] violate[d] fundamental conceptions of justice," Perry v. New Hampshire, 132 S. Ct. 716, 723 (2012) (internal quotation marks omitted). On this record, the Appellate Division's alternative holding denying this claim on the merits was not contrary to or an unreasonable application of Supreme Court precedent, and Crawford is not entitled to relief.

2. *Confrontation Clause*

The Confrontation Clause of the Sixth Amendment generally bars the admission of out-of-court statements that are testimonial and that have not been subject to cross examination. Davis v. Washington, 547 U.S. 813, 821 (2006); Crawford v. Washington, 541 U.S. 36, 53-54 (2004). Violations of the Confrontation Clause are subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). A Confrontation Clause violation is harmless unless it "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States,

328 U.S. 750, 776 (1946)); see also Fry v. Pliler, 551 U.S. 112, 119-22 (2007). In assessing the harmlessness of an error, courts look to "the record as a whole, evaluating, inter alia, the overall strength of the prosecution's case, the importance of the improperly admitted evidence, and whether the evidence was emphasized at trial." Brown v. Keane, 355 F.3d 82, 92 (2d Cir. 2004); see also Van Arsdall, 475 U.S. at 684 (stating that relevant factors in analyzing harmlessness of Confrontation error include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.").

Although the Court has serious reservations about the admissibility of some of the elicited testimony, the Court cannot find that any errors "'had substantial and injurious effect or influence in determining the jury's verdict'" and therefore Crawford cannot prevail. Brecht, 507 U.S. at 637. For the reasons stated in the above due process analysis, the strength of the prosecution's case independent of the out-of-court identifications was substantial, and thus the potential impact of those references to Crawford were minimized. Cf. Ryan v. Miller, 303 F.3d 231, 254-55 (2d Cir. 2002) (finding Confrontation violation was not harmless because it was the "lynchpin of the prosecution's circumstantial case" and the contested testimony "was not merely mentioned in passing."). Considering the record as a whole, any Confrontation error did not have a "substantial and injurious effect or influence in determining the jury's verdict." The Appellate Division's alternative holding was not contrary to or an unreasonable application of Supreme Court precedent; accordingly, Crawford is not entitled to habeas relief on this claim.

## II.     Prosecutorial Misconduct

- 12 -

On direct appeal, Crawford argued that various instances of prosecutorial misconduct denied him his due process right to a fair trial. He argued that the prosecutor made improper remarks during his summation, mischaracterized a prior statement of a non-witness while cross-examining Brown, and improperly bolstered the identification of Ashley's wallet by eliciting testimony from another witness that the investigation's focus on Crawford became stronger after Ashley's girlfriend identified the wallet found in Crawford's apartment as belonging to Ashley.

"The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Thus, habeas relief is not warranted unless "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see United States v. Young, 470 U.S. 1, 11-12 (1985). "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned," id. (internal quotation marks omitted). Rather, the comments must constitute "egregious misconduct," Floyd, 907 F.2d at 353, and result in actual prejudice, meaning that the comments had a "substantial and injurious effect or influence in determining the jury's verdict," Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994). In determining whether a petitioner has suffered actual prejudice, the Court considers "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (internal quotation marks omitted).

A.      Prosecutor's Summation

Crawford argued that various statements made by the prosecutor during his summation deprived him of his right to a fair trial. Specifically, Crawford argued that the following portions of the prosecution's summation were improper:

1) The prosecutor suggested that Browning came forward with information about Dell after she saw posters in the neighborhood offering a reward for information about Ashley's death. Defense counsel objected, and the trial court sustained the objection and gave the jury curative instructions. (Trial Tr. Vol. IX at 850-58.)

2) The prosecutor called Crawford a "drug addict" who "need[ed] money" and argued that Crawford's motive for killing and robbing Ashley was to feed his drug addiction. (Trial Tr. Vol. IX at 884.) Defense counsel did not object to these comments.

3) The prosecutor commented on Crawford's lack of self-defense evidence. (Trial Tr. Vol. IX at 865, 875.) Defense counsel did not object to these statements.

4) The prosecutor called its own witnesses credible. (Trial Tr. Vol. IX at 847-65.) Defense counsel made no objection on these grounds.

5) The prosecutor questioned defense counsel's integrity by asserting that defense counsel had made improper arguments in his summation. (Trial Tr. Vol. IX at 865.) Defense counsel did not object to these statements.

The Appellate Division held that the these "claims of prosecutorial misconduct on summation are unpreserved for appellate review because the defendant either failed to raise any objection, voiced a general objection without specifying the grounds therefor, or failed to seek further relief when an objection was sustained or when a curative instruction was provided to the court." Crawford, 54 A.D.3d at 962. The Appellate Division further held that "[i]n any event, the challenged portions of the prosecutor's summation constituted fair response to arguments presented in summation by defense counsel, or fair comment on the evidence and the reasonable inferences to be drawn therefrom. Id.

Once again, the Appellate Division's rejection of this claim constitutes an independent and adequate state procedural ground precluding federal habeas review of this claim. Harris, 489 U.S. at 262; Richardson, 497 F.3d at 217-220. Crawford has failed to advance any argument

- 14 -

regarding cause for the procedural default or suggesting that a fundamental miscarriage of justice would occur if his claim is not addressed. Thus, the Court finds this claim barred by the procedural default doctrine. <u>Silent</u>, 2008 WL 5113418, at *7.

In any event, the Appellate Division's alternative resolution of this claim on the merits was not contrary to or an unreasonable application of clearly established federal law. Crawford first objected to the prosecutor's suggestion during summation that Browning's story was motivated by the reward posters. According to Crawford, this argument was a deliberate fabrication that was not supported by the evidence presented at trial, which conclusively established that the reward posters were first circulated on October 9, 2004, after Browning provided her statement to the police on October 7, 2004. This Court's review of the record shows that there were some ambiguities in Detective Lantino's testimony as to when the reward posters were circulated. On direct examination, Detective Lantino testified that a reward poster with a photo was "made up and posted" on or around October 5th, 2004—two days before Detective Lantino's meeting with Browning. (Trial Tr. Vol. VIII at 641-42, 853.) He also testified that a second poster, without a photo, was circulated on or about October 2nd, 3rd, or 4th. (<u>Id.</u> at 767.) On cross examination, Detective Lantino explained that the poster with a photo was requested on October 5th but that the request date was not necessarily the same as the circulation date and that it "takes some time" to actually get the poster. (<u>Id.</u> at 769-70.) Then, on redirect, Lantino testified that according to a police report prepared by a different detective, the second poster without a photo was prepared on October 9, 2004—two days after Detective Lantino's meeting with Browning—and that he believed this poster was the first to be circulated. (<u>Id.</u> at 770-71.) Finally, at the end of Detective Lantino's testimony, on recross, defense counsel asked: "So when Tiaya Browning went into the precinct on the 7th, no posters had been posted

yet, right?" (Id. at 791.) Detective Lantino responded, "To my knowledge, yes." Id. The

prosecutor read this last exchange to the jury during his summation, and then argued that at least

one poster was circulated on October 5, 2004. (Trial Tr. Vol. IX at 851-52.)

In light of Detective Lantino's unclear testimony, the prosecutor's argument that the

reward posters were likely circulated before Browning came to the police with information was

not, as Crawford contends, knowingly based upon false information but comment on ambiguous

evidence. See United States v. Williams, 205 F.3d 23, 35 (2d Cir. 2000) ("The government has

broad latitude in the inferences it may reasonably suggest to the jury during summation."

(quoting United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989)). Moreover, to the

extent that the prosecutor mischaracterized any evidence presented, Crawford has failed to show

that such argument wreaked a "substantial and injurious effect" upon the verdict, considering

that the argument was promptly objected to and sustained and the jurors were given two curative

instructions reminding them that their recollection of the evidence controlled and to disregard

any comments by the attorneys that differed from their own recollection. (Trial Tr. Vol. IX at

851-52.)

Second, Crawford argued that the prosecutor improperly attacked Crawford's character

without any evidentiary basis. During summation, the prosecutor characterized Crawford as a

"drug addict" who "need[ed] money" and argued that Crawford's motive for killing and robbing

Ashley was to feed his drug addiction. (Trial Tr. 884.) The prosecutor also urged the jury to

consider what "kind of person" would "stab[] another human being to death, drag[] him between

two cars, stuff[] him in a bag, and . . . steal[] a dead man's sneakers." (Trial Tr. 874.) Crawford

argues that these comments were highly inflammatory and led the jury to believe that Crawford

had a propensity to commit violent crimes to support his drug addiction. However, the Court

- 16 -

finds that these arguments were not improper in light of the evidence presented at trial. The defendant admitted to being "high off the crack and dope" during the incident as well as to taking Ashley's wallet and buying drugs with the money inside. (Trial Tr. Vol. VIII at 679.) The prosecutor's comments were reasonably based upon the evidence presented and were not so inflammatory as to have deprived Crawford of due process.

Third, Crawford argued that the prosecutor improperly shifted to the defense the burden of proving that Crawford acted in self-defense by asking the jury to consider whether they had "heard any witness questioned" by the defense counsel about Ashley being violent. (Trial Tr. Vol. IX at 875.) Even if this statement could be read to imply, contrary to New York state law, see N.Y. Penal Law § 25.00, § 35.00, that the defendant had the burden to prove he was entitled to the defense of self-defense (or "justification" as it is called under New York law), this one stray remark was not so egregious as to have deprived Crawford of a fundamentally fair trial and caused a "substantial and injurious effect" on the jury's verdict. The prosecution did not repeat the remark, and, in fact, later clarified that it had the burden to prove Crawford was not justified. (Trial Tr. Vol. IX at 882.) Most of the argument against justification focused on the fact that there was no evidence of a gun. (Trial Tr. Vol. IX at 872, 875, 882-85.) See Casamento, 887 F.2d at 1189 ("In determining whether the defendant suffered substantial prejudice, we will view the allegedly improper statements in the context of the prosecutor's entire argument to the jury."). Further, the trial court properly and carefully instructed the jury that the prosecution must prove beyond a reasonable doubt that Crawford was not justified. (Trial Tr. Vol. IX at 921, 925.)

Fourth, Crawford argues that the prosecutor improperly vouched for the credibility of the government witnesses. "While the prosecution may not 'vouch' for the credibility of its

witnesses, . . . when the defense counsel have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." United States v. Carr, 424 F.3d 213, 227 (2d Cir. 2005) (quoting United States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994)). In this case, defense counsel challenged the credibility of these witnesses during his own summation, stating: "I told you on opening statement to watch the difference in which the witnesses spoke to the prosecution on direct versus the way they spoke and answered my questions on cross." (Trial Tr. Vol. IX at 829.) Defense counsel noted that "it was like pulling teeth" to get the prosecution witnesses to answer his questions. (Id.) The defense then proceeded to discuss various prosecution witnesses, questioning their credibility. (Id. at 830-36.) The prosecutor responded in summation by comparing the demeanor of the government witnesses to the sole defense witness (Browning), arguing that the demeanor of the prosecution witnesses had not changed during cross-examination, unlike that of Browning, and that the jury should base its verdict on the "credible" prosecution witnesses. (Trial Tr. 847-51, 858-65.) In light of defense counsel's own summation, the prosecutor's statements were not improper. E.g., United States v. Young, 470 U.S. 1, 12–13 (1985) ( "[A] reviewing court must also take into account defense counsel's opening salvo . . . . if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction."); Brito v. Brown, No. 09 Civ. 5754, 2011 WL 1542516, at *7 (S.D.N.Y. April 21, 2011) ("At the summation stage, a prosecutor's comments must be evaluated in light of the defense argument that preceded it." (alteration and internal quotation marks omitted)).

Lastly, Crawford argues that the prosecutor improperly attacked defense counsel's integrity. The prosecutor stated that counsel for the defense "stands up and says don't speculate

and then he asks you to speculate. Basically, he tells you don't look at the monkey and then he waves the monkey in front of you." (Trial Tr. Vol. IX at 865.) These statements, however, were in response to defense counsel's argument in his opening statement and summation that the prosecution would ask the jury to speculate about what the evidence meant. (Trial Tr. Vol. IV at 52, 53; Vol. IX at 831, 833.) It was not improper for the prosecutor to argue that it was defense counsel, not the government, who was asking the jury to speculate about what really happened.

For the foregoing reasons, Court finds no basis to conclude that the prosecutor's statements during summation "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181. Accordingly, the Appellate Division's denial of this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and Crawford is not entitled to relief on this claim.

B.    Prosecutor's Cross-examination of Browning

Crawford also alleged that the prosecutor improperly suggested during the cross-examination of Browning that Browning's cousin, Sheila Vaughan, told the investigator for the defense team, Leroy Swinney, that Browning's story was a lie. The Appellate Division held that this claim "does not warrant reversal because the trial court's actions were sufficient to avert any substantial prejudice to the defendant." Crawford, 54 A.D. at 962. This is a merits determination entitled to AEDPA deference.

During Browning's cross-examination at trial, the prosecution asked Browning whether Vaughan mentioned to her that Swinney came and talked to Vaughan, to which Browning answered no. The following exchange then took place:

Q: So you don't know that Sheila told Mr. Swinney –

    [Defense counsel]: Objection, to what she –

- 19 -

Q: -- what you said wasn't true?

    The Court: I will sustain and strike it. Jurors will disregard.

Q: Well, where is Sheila now?

    [Defense counsel]: Objection.

    The Court: Sustained and I'll strike it. Jurors will disregard.

Q: Is there a reason that Sheila would tell Mr. Swinney –

    [Defense counsel]: Objection, Judge.

Q: -- what you said wasn't true?

    The Court: Sustained. I'll strike it.

(Trial Tr. Vol. VII at 589-90.) Defense counsel then moved for a mistrial, which the trial court denied. After a sidebar, the Court instructed the jury that "the defense has no obligation or burden to do anything whatsoever in this case and certainly they need not call any witnesses. That being said, I'll remind you that certainly it is the People's obligation to prove guilt beyond a reasonable doubt." (Id. at 593.)

The prosecution's persistence in pursuing a line of questioning disallowed by the trial court was clearly not proper, but such questioning did not render Crawford's trial fundamentally unfair. The actions by the court in sustaining the objections and striking the testimony rendered any prejudice remote. Moreover, there was other evidence at trial that cast doubt on Browning's story, including the fact that Dell's story did not match the physical evidence, and, more significantly, that Crawford twice confessed to the offense after properly administered Miranda warnings, and that Crawford's account matched the physical evidence. The strength of the evidence against Crawford "reduced the likelihood that the jury's decision was influenced" by the prosecutor's attempt to undermine Browning's credibility. Darden, 477 U.S. at 182

("[O]verwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges reduced the likelihood that the jury's decision was influenced by argument." (citation and internal quotation marks omitted)). Certainly, the Appellate Division's rejection of the claim was not "so lacking in justification" that fairminded jurists could not disagree on the incorrectness of the ruling. Harrington, 131 S. Ct. at 786.

      C.     Improper Bolstering

Finally, Crawford argued that the prosecutor improperly bolstered Michelle Ferguson's testimony about her identification of Ashley's wallet. Detective Lantino testified that the focus on the investigation on Crawford became "stronger" after Ferguson, Ashley's girlfriend, identified the wallet found in Crawford's apartment. (Trial Tr. Vol. VIII at 788.) The Appellate Division did not address this claim.

"Bolstering" is "a New York State rule or policy, derived from People v. Trowbridge, 305 N.Y. 471, 113 N.E.2d 841 (1953), which holds that it is error to permit an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification did occur." Snow v. Reid, 619 F. Supp. 579, 582 (S.D.N.Y. 1985). Several courts in this Circuit have recognized that, as a state evidentiary rule, bolstering "has no place as an issue in criminal jurisprudence based on the United States Constitution." Id.; see also Orr v. Schaeffer, 460 F.Supp. 964, 967 (S.D.N.Y.1978) ("[T]his Circuit has never regarded the practice [of bolstering] as inimical to trial fairness."); Ayala v. Hernandez, 712 F. Supp. 1069, 1074 (E.D.N.Y. 1989); Campbell v. Poole, 555 F. Supp. 2d 345, 371 (W.D.N.Y. 2008). As with other claims of state evidentiary error, Crawford's claim "is of constitutional magnitude only if it denied [him] a 'fundamentally fair trial.'" Styles v. Zandt, No. 94 CIV. 1863 (MGC), 1995 WL 326445 (S.D.N.Y. May 31, 1995) (quoting Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)).

- 21 -

As an initial matter, the Court notes that it does not appear that the prosecution engaged in bolstering at all: the prosecution simply asked Detective Lantino when the investigation shifted from Dell to Crawford. Lantino answered that the focus shifted "on the 20th [of October 2004] and stronger on the 24th for the identification of the wallet." (Trial Tr. Vol. VIII at 788.) The record thus demonstrates that the prosecution did not seek to prompt a bolstering identification at all. And to the extent that any improper bolstering did occur, Crawford has clearly failed to show that the state evidentiary error rose to the level of a due process violation.

## CONCLUSION

For the reasons set forth above, the habeas petition is denied. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and to close this case.

Dated: Brooklyn, New York
February 25, 2013

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge